**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

|  |  |
|---|---|
| Mykola Kolomiichuk, *on behalf of himself and all others similarly situated,* | : |
|  | : |
|  | : |
|  | : |
| Plaintiff, | : |
| v. | : Civil Action No.:  7:18-cv-01223 (KMK) |
|  | : |
| Town Sports International Holdings, Inc.; and Town Sports International, LLC, | : |
|  | : |
|  | : |
| Defendants. | : |
|  | : |

———————————————————————

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

FACTUAL SUPPORT FOR CLASS CERTIFICATION ................................................................ 2

ARGUMENT ......................................................................................................................... 10

  I.     STANDARD FOR CLASS CERTIFICATION ............................................... 10

  II.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED ........................... 11

      A.   Numerosity is Satisfied ................................................................. 11

      B.   Commonality is Satisfied .............................................................. 12

      C.   Typicality is Satisfied ................................................................... 14

      D.   Adequacy of Representation is Satisfied ....................................... 15

      E.   The Proposed Class Is Identified and Ascertainable ..................... 17

  III.   THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED ................... 18

      A.   Predominance is Satisfied ............................................................. 18

      B.   Superiority is Satisfied ................................................................. 25

CONCLUSION ...................................................................................................................... 26

Plaintiff Mykola Kolomiichuk, by and through undersigned counsel, hereby submits this Memorandum of Law in support of his motion for class certification.

Defendants Town Sports International Holdings, Inc. and Town Sports International, LLC ("TSI") are the operators of gym clubs located across the east coast of the United States. Throughout the last several years TSI has engaged in a bait-and-switch scheme in which it advertises attractive low monthly membership dues and then, unbeknownst to gym members and without their consent, unilaterally raises the dues and modifies its gym membership contracts without the requisite authority or power to do so.

Plaintiff is one such consumer.  In January 2015, after viewing TSI's advertisement for $19.95 monthly dues, Plaintiff entered into a gym membership contract with TSI.  The agreement, like all class member agreements, was to "continue month to month."[1] Monthly dues would be $19.95 and the contract would continue unless and until either of the parties cancelled with Plaintiff to pay a cancellation fee in that event.  The agreement did not provide TSI with the right to raise monthly dues or otherwise unilaterally modify the contract.

Nonetheless, two years later TSI unilaterally raised Plaintiff's and class members' monthly dues from $19.95 to $29.95, and then later to $39.95 and $44.95.  Nothing in the contracts allowed TSI to raise the monthly dues.  If TSI wanted to raise rates for Plaintiff and others it had several options.  TSI could present customers with, and have them agree to, new

---

[1] A copy of the terms of the agreement are attached as <u>Exhibit A</u> to the Declaration of Stephen Taylor.  However, as noted in parts B and D of the facts section below, the "Monthly Dues" figure under "Charges and Monthly Dues" is not accurate.  This is because TSI generated <u>Exhibit A</u> in 2017 when Plaintiff asked for a copy of his contract and TSI had a policy of (1) inputting its unilaterally increased rates into old agreements and (2) then affixing customer's *older* signatures to its newly created agreements. The agreement Plaintiff actually signed had a "Monthly Dues" of $19.95.

1

agreements.  Second, TSI could cancel the agreements outright, which under their terms TSI could do at any time and for any reason, and have customers enter new agreements.

What TSI could not do was what it did: unilaterally modify the membership terms without consent to charge higher rates, impose its cancellation fee if the customer did not agree, then proceed to withdraw money from customer bank accounts without any new authorizations whatsoever.

This practice affected tens of thousands of consumers who entered into materially identical month-to-month contracts containing fixed monthly dues.  As to all, TSI unilateral raised the monthly dues without the right to do so and despite not getting customer agreement for the increase.  Plaintiff seeks relief on behalf of himself and classes of similarly situated consumers located in New York, Massachusetts, Pennsylvania and the District of Columbia. Plaintiff seeks to recover those funds which TSI unfairly took from Plaintiff and class members' bank accounts and to end TSI's practice of raising monthly rates without member consent.  As set forth below, Plaintiff satisfies the requirements of Rule 23(a) and 23(b)(3), and thus respectfully requests that the Court grant his motion for class certification.

## FACTUAL SUPPORT FOR CLASS CERTIFICATION

TSI are the parent companies for localized brands of health clubs that operate in various markets. (Holden[2] First Dep. Tr.[3] 15:8-17). These include Boston Sports Club (covering Massachusetts), New York Sports Club (covering New York), Washington Sports Club (covering the District of Columbia) and Philadelphia Sports Club (covering Pennsylvania.

---

[2] Gregg Holden is Senior Director of Members Services at Town Sports International and its Rule 30(b)(6) designee. (Holden First Dep. Tr. 7:5-17)

[3] "Holden First Dep. Tr." refers to the transcript of the January 23, 2019 deposition of Gregg Holden, Defendant's 30(b)(6) witness, a copy of which is attached the Declaration of Stephen Taylor as Exhibit B.

(Holden First Dep. Tr.15:20-17:15).   TSI has approximately 600,000 members. (Holden First Dep. Tr. 219:6-12).

### A.  TSI Membership Agreements

TSI offers month-to-month gym memberships to consumers which continue until they are canceled. (Holden First Dep. Tr. 109:5-9; 122:3-21).

A member can cancel the agreement in one of two ways. (Holden First Dep. Tr. 110:7-113:13; Exhibit A ("CONSUMERS RIGHT TO CANCELLATION" & "Cancellation")).   First, under limited circumstances (within three days of signing up, a significant physical disability or death, the members moves away from a gym or services cease to be offered), the member can cancel an agreement outright. (Holden First Dep. Tr. 110:15-111:11; Exhibit A ("CONSUMERS RIGHT TO CANCELLATION")). Second, in all other situations if a member wants to cancel the "month-to-month" contract they are required to pay a $29.95 cancelation fee. (Holden First Dep. Tr. 111:12-23; Exhibit A ("Cancellation")).

TSI, however, can cancel a membership at any time for any reason. (Holden First Dep. Tr. 119:16-120:22; Exhibit A ("TERM AND CONDITIONS 2.1 Revocation of Membership")).

Under TSI's membership agreements, members authorize TSI to charge their credit or debit card for the amounts agreed the day they sign up. (Holden First Dep. Tr. 123:3-124:8; 128:12-23; 133:5-11). Aside from the membership agreements, TSI is not aware of any other authorizations permitting it to deduct from members' credit or debit cards any amounts other than the amounts originally agreed to at the time the member signs up with TSI. (Holden First Dep. Tr. 128:12-131:11)  As of December 31, 2018, "approximately 99% of [TSI] members pay

their membership dues through monthly electronic fund transfers ('EFT').["4]

### B.  TSI's Creation of Membership Agreements

TSI does not have its customers physically sign membership agreements. (Holden First Dep. Tr. 59:2-11).  Instead, TSI uses software called MotionSoft, (Holden First Dep. Tr. 31:14-32:6), which "capture[s]" a member's electronic signature (Holden First Dep. Tr. 61:1-6).  TSI can subsequently place that captured electronic signature onto a gym membership contract. (Holden First Dep. Tr. 64:17-65:7)

TSI uses universal templates to create membership agreements. (Holden First Dep. Tr. 55:8-56:11).  The same template is used for all members in a given state, (Holden First Dep. Tr. 107:7-108:1), and TSI gyms only use a single template at any given time (Holden First Dep. Tr. 107:3-6; 108:2-6).  Aside from member specific information (name, address, phone number, and gym location) all membership agreements and terms are substantially similar. The only difference between the templates TSI uses in different states is certain required state specific information. (Holden First Dep. Tr. 108:7-18; Holden Second Dep. Tr. [5] 49:1-12).

When someone signs up with TSI and agrees to a membership agreement, TSI does not generate a physical or pdf copy of a signed agreement memorializing the material terms agreed to by the parties, such as the monthly dues. (Holden First Dep. Tr. 82:18-83:4).  Instead, a pdf version of a member agreement can be generated at any time thereafter, however whenever the agreement is generated TSI uses the current monthly dues *it sets*, and then inputs them into the agreement template. (Holden First Dep. Tr. 89:16-20 (Q. So when the PDF of a Membership

---

[4] *See* http://www.annualreports.com/HostedData/AnnualReports/PDF/NASDAQ_CLUB_2018.pdf  at p. 5.
[5] "Holden Second Dep. Tr." refers to the transcript of the May 22, 2019 deposition of Gregg Holden, Defendant's 30(b)(6) witness, a copy of which is attached the Declaration of Stephen Taylor as <u>Exhibit C</u>.

Agreement is created, it will include the monthly dues that are recorded in the system as of the date the PDF is created? A. Correct.")).

### C.  TSI's Policy of Unilaterally Raising Monthly Membership Dues

Since 2016 TSI has a practice and policy of raising monthly rates for existing members. (Holden First Dep. Tr. 146:2-8; 146:24-147:7; TSI Resp. to Pl. RFA[6] No. 4 ("TSI admits that it implemented dues increases for monthly membership agreements for certain TSI clubs and members.")).  While TSI claimed that the rate increases were required to invest into TSI programs and equipment, its 30(b)(6) witness does not know what percentage of the rate increase was actually invested in TSI facilities. (Holden First Dep. Tr. 154:4-155:13).

Despite the fact that nothing in the membership agreements provide that TSI could unilaterally increase monthly membership dues without the member's consent (Holden First Dep. Tr. 157:9-158:13), TSI maintains it can unilaterally raise rates without members: (1) executing a new agreement; (2) modifying their existing agreement; or (3) affirmatively doing anything to agree to the TSI rate increase. (Holden First Dep. Tr. 160:22-161:18).

TSI could have setup a process pursuant to which TSI members, upon entering a TSI gym, would need to affirmatively agree to a rate increase, but it did not do so. (Holden First Dep. Tr.193:8-24).  In fact, TSI did not even have signage up in its gyms notifying members about the increase. (Holden Second Dep. Tr. 77:15-21).  At most, TSI merely sends a letter or email to members advising that the dues were increasing, but does not require that the member agree to the new rate.  (Holden Second Dep. Tr. 74:3-21; Holden First Dep. Tr. 198:19-199:7).  TSI does not even know if the letters or emails are received. (Holden First Dep. Tr. 215:2-216:22; *see also* Tr. 173:16-19 (letters were not sent via certified mail)).

---

[6] "TSI Resp. to Pl. RFA" refers to Defendants' Answers to Plaintiff's Request to Admit, a copy of which is attached as Exhibit D to the Declaration of Stephen Taylor.

When existing members were inevitably upset that TSI raised their membership rates without the member's consent, TSI suggested that its employees could resolve members' concerns via a number of options but did not offer to waive its cancellation fee and cancel the membership agreement. (Holden First Dep. Tr. 209:14-211:10).

Indeed, members who sought to cancel their agreement in light of the unilateral rate increase by TSI were told that "Yes" they would have to pay a cancel fee. (Holden First Dep. Tr. 203:15-209:7).

### D.  Plaintiff's Experience

On January 5, 2015, after viewing a TSI promotion offering a $19.95 membership rate Plaintiff visited the Dobbs Ferry, New York location of TSI's New York Sports Club. (Kolomiichuk Tr.[7] 22:9-16; 25:3-14).  He met with a TSI employee who told him he needed to pay approximately $200 to join TSI and then would have to pay $19.95 per month thereafter. (Kolomiichuk Tr. 27:8-28:6; 31:16-25).   Plaintiff agreed and signed up for the TSI gym membership by electronically signing a pad. (Kolomiichuk Tr. 32:22-34:6).  At the time, the pad's electronic display screen stated the monthly membership dues were $19.95. (Holden First Dep. Tr. 82:13-16).

A copy of Plaintiff's membership agreement (the "Kolomiichuk Agreement"), which TSI produced to Plaintiff in this lawsuit, is submitted as Exhibit A to the Declaration of Stephen Taylor.  The agreement lists the "Monthly Dues" as $29.95 rather than $19.95 because "[t]he date on which the PDF was generated was after the member's dues had been increased," (Holden First Dep. Tr. 83:6-10), however when Plaintiff signed the agreement on January 5, 2015, the $29.95 number was not there (Holden First Dep. Tr. 88:1-22).  The Kolomiichuk Agreement was

---

[7] "Kolomiichuk Tr." refers to the transcript of the January 2, 2019 deposition of Plaintiff Mykola Kolomiichuk, a copy of which is attached as Exhibit E to the Declaration of Stephen Taylor.

generated from a template which was used at all New York TSI locations as of January 2015. (Holden First Dep. Tr. 104:9-11).  TSI has produced no other agreements signed by Plaintiff.

After signing the agreement with TSI, Plaintiff was charged $19.95 each month throughout 2015. (Kolomiichuk Tr. 62:13-63:6).

However, two years later, in the beginning of 2017 TSI began charging Plaintiff $29.95 per month. (Kolomiichuk Tr. 64:12-14; TSI Resp. to Pl. RFA No. 9; Holden First Dep. Tr. 130:2-3).

Plaintiff was upset about the increase in the monthly membership rate. (Kolomiichuk Tr. 64:24-65:3). He did not believe TSI can raise his monthly dues because he has an agreement for $19.95 which would "continue[ ] month to month" until he or TSI cancels it.  (Kolomiichuk Tr. 14:10-15; 15:18-24; 31:20-25; 48:2-9; 67:19-21; 76:7-14).   Upon learning that TSI raised his monthly membership dues, Plaintiff called the Dobbs Ferry, New York TSI location and objected to a TSI employee. (Kolomiichuk Tr.65:4-66:11). Plaintiff asked TSI to honor his membership agreement for $19.95 monthly dues but was told he needed to pay $29.95. (Kolomiichuk Tr. 67:14-24).

TSI continued to charge Plaintiff $29.95 each month in 2017. (Kolomiichuk Tr. 67:25-68:7).  In January 2018 TSI began charging Plaintiff a monthly fee of $39.95. (TSI Resp. to RFA No. 11; Holden First Dep. Tr. 130:4-13).   TSI later raised Plaintiff's monthly fee to $44.95. (Holden First Dep. Tr. 130:4-13).

Plaintiff sued TSI because TSI charged him more money than he agreed to, *i.e.,* only $19.95 a month. (Kolomiichuk Tr. 14:10-19).  Plaintiff wants to represent other people who were unfairly charged by TSI. (Kolomiichuk Tr. 15:25-16:19).  He is aware he is bringing this lawsuit on behalf of a class of similarly situated people (Kolomiichuk Tr. 96:16-19) and understands he

is a class representative (*id.* at 16:16-19).  Plaintiff hopes that as a result of this lawsuit TSI will

stop unfairly raising members' rates and that TSI will return to existing members "unfairly

charged amount[s]." (Kolomiichuk Tr. 97:5-15; *see also* Tr. 98:4-9 (Plaintiff wants TSI to return

increased charges monthly rates "[n]ot just for [him]" but also "for everybody who was charged

unfairly.").

### E.  The Classes

Plaintiff is far from the only person whose monthly dues TSI raised unilaterally.  TSI

estimates that when it raised monthly dues for members who had previously executed month-to-

month membership agreements, it raised the monthly dues for approximately 50,000 to 70,000

people during each rate hike cycle. (Holden First Dep. Tr. 214:6-21; 217:2-13; 219:20-24;

220:24-221:3; *see also* Holden Second Dep. Tr. 44:9-18; 46:18-2; 61:17-22 (TSI calculates that

during one instance where it raised monthly dues, 94,484[8] members' dues were raised)).  Those

estimated 50,000 to 70,000 members have substantially similar membership agreements as the

Plaintiff in that the cancellation terms are similar and they are all month-to-month agreements.

(Holden First Dep. Tr. 220:24-22:19).  As with Plaintiff, TSI has nothing in writing showing that

any of these members ever agreed to the rate increases. (Holden Second Dep. Tr. 76:21-77:4).

Plaintiff seeks to certify the following classes:

New York Class: All individuals who reside in the State of New York who (1)
entered into a membership agreement with TSI substantially similar to Plaintiff's,
(2) on or after February 7, 2014, and (3) who were charged by TSI a monthly due
in excess of the amount set forth in their membership agreement.

---

[8] To get that figure, TSI took the total number of members at that time and excluded those
members who either signed up that year (and therefore whose rates would not be increased that
year), had paid in full membership, had  rate lock members, had corporate partnership
memberships, had memberships at gyms where the dues were not increased, those who cancelled
their membership, and those whose dues were greater than $64.01 (and therefore whose rates
would not be increased per TSI policy) and other certain other exceptions.   (Holden Second
Dep. Tr. 40:22-44:13).

Massachusetts Class: All individuals who reside in the Commonwealth of
Massachusetts who (1) entered into a membership agreement with TSI
substantially similar to Plaintiff's, (2) on or after February 7, 2014, and (3) who
were charged by TSI a monthly due in excess of the amount set forth in their
membership agreement.

Washington, D.C. Class: All individuals who reside in Washington, D.C. who (1)
entered into a membership agreement with TSI substantially similar to Plaintiff's,
(2) on or after February 7, 2014, and (3) who were charged by TSI a monthly due
in excess of the amount set forth in their membership agreement.

Pennsylvania Class: All individuals who reside in the Commonwealth of
Pennsylvania who (1) entered into a membership agreement with TSI
substantially similar to Plaintiff's, (2) on or after February 7, 2014, and (3) who
were charged by TSI a monthly due in excess of the amount set forth in their
membership agreement.

TSI has detailed records about the class members.  Its records contain putative class

members' names, addresses, membership type, the date the membership agreement was

executed, and the associated membership template.  (Holden First Dep. Tr. 224:21-225:5;

226:17-227:2).  TSI also has lists and spreadsheets of names and addresses of members whose

rates had been increased after they had executed a month-to-month membership agreement

within the last seven years. (Holden First Dep. Tr. 231:9-21; Holden Second Dep. Tr. 53:16-

54:2; 56:7-14).[9]

As set forth in his Amended Complaint and for himself and members of the classes,

Plaintiff seeks relief for (1) breach of contract; (2) breach of the implied covenant of good faith

and fair dealing; (3) unjust enrichment; and (4) violation of state specific consumer protection

acts.  As addressed in the predominance section below, the requirements for each of these claims

are materially the same in New York, Massachusetts, Pennsylvania and Washington D.C.  The

---

[9] In fact, it compiles similar lists in its normal course of business; as part of its process of
unilaterally imposing a monthly dues rate increase, TSI creates an Excel file containing all of the
individuals affected by the rate increase. (Holden First Dep. Tr. 228:18-229:10).

one exception is breach of the covenant of good faith and fair dealing which is not recognized in Pennsylvania.

## ARGUMENT

### I.   STANDARD FOR CLASS CERTIFICATION

The class action vehicle is appropriate where a party has uniformly damaged a large group of individuals through a common practice or unitary course of conduct. The U.S. Supreme Court has consistently emphasized the importance of class action litigation where, as here, class members suffer relatively small injuries at the hands of a business entity. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (internal citation omitted); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ("Class actions serve an important function in our system of civil justice."); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without an effective redress unless they may employ the class-action device."). Further, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (internal citations and quotation marks omitted).

Rule 23 outlines a two-step process for determining whether class certification is appropriate. The party seeking class certification must first establish the four requirements of Rule 23(a) are satisfied: numerosity, commonality, typicality, and adequacy of representation. *See Flores v. Anjost Corp.*, 284 F.R.D. 112, 121 (S.D.N.Y. 2012).  In addition, there is an "implied requirement that the membership of the class is identifiable and ascertainable." *Flores*, 284 F.R.D. at 121.

Once subdivision (a) is satisfied, the party seeking certification must demonstrate that the

action falls into one of three categories under Rule 23(b). *See Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).   A class action may be maintained pursuant to Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (U.S. 1974) (emphasis added); *see also Kowalski v. YellowPages.com, LLC*, 2012 WL 1097350, at *12 (S.D.N.Y. Mar. 31, 2012) (internal citations and quotation marks omitted).

## II.  THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED

### A.  Numerosity is Satisfied

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  A plaintiff need not precisely quantify the prospective class so long as reasonable estimates are provided. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004).   As a general rule, a prospective class of forty or more raises a presumption of numerosity. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

TSI does not contest numerosity with respect to any of the putative classes. (TSI Resp. to Pl. RFA Nos. 14, 15, 16, 17, 18).  Moreover, the evidence establishes that the class members – all individuals who entered into a membership agreement with TSI on or after February 7, 2014 and who were charged a monthly due in excess if of the amount set forth in their membership

agreements – number in the tens of thousands; TSI estimates that on average when it increased its monthly dues for members who had previously executed month-to-month membership agreements, it raised the monthly dues for approximately 50,000 to 70,000 people during each rate hike cycle. (Holden First Dep. Tr. 214:6-21; 217:2-13; 219:20-24; 220:24-221:3).  Given that the size of the class is in the thousands, numerosity is easily established in this case. *See Consol. Rail Corp.*, 47 F.3d at 483.

### B. <u>Commonality is Satisfied</u>

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To satisfy commonality, class members' claims "must depend upon a common contention" that "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  However, common claims need not be identical. *Caridad v. Metro North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir.  1999) *overruled on other grounds*; *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987).  That the class members' individual circumstances differ is of no moment, provided that "their injuries derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.  1997). "[T]here is no requirement that the claims of all the potential class members. . . have every issue of law and fact in common. An alleged common course of conduct is sufficient to satisfy the common question requirements." *Thompson v. Linvatec Corp.*, 2007 WL 1526418, *5 (N.D.N.Y., May 22, 2007); *see also Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010) ("Rule 23(b)(3) requires that common questions predominate, not that the action include only common questions.").

Here, the questions of law and fact common to all class members include, among others:

1. Did TSI breach the terms of membership contracts by raising rates beyond what was agreed?

2. Did TSI breach the terms of membership contracts' "Billing Authorization" by withdrawing more from credit card or bank accounts than what was agreed?

3. Did TSI breach the covenant of good faith and fair dealing by frustrating the reasonable expectation of customers who signed contracts which continued month to month and which did not provide for rate increase or unilateral modification?

4. Is it against good conscience and equity to permit TSI to retain rate increase amounts not agreed to and taken in violation of membership agreement terms such that TSI is unjustly enriched?

5. Did TSI engage in a deceptive act by promising under the membership agreements that they would continue month to month until cancelled and then, years later, unilaterally altering the contracts to raise monthly dues?

The answer to these questions are common to all class members and therefore the commonality requirement is satisfied. *See, e.g., Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) ("Because all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers, the duty of good faith was an obligation that it owed to the dealers as a whole. Whether it breached that obligation was a question common to the class and the issue of liability was appropriately determined on a class-wide basis."); *Heartland Commc'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995) (commonality satisfied in breach of contract class action where majority of contracts were virtually identical); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 481 (3d Cir. 2015) ("[T]he causation element of fraud and breach of contract can be satisfied through objective circumstantial evidence on a classwide basis.") (citing Elizabeth J. Cabraser, *Trends and Developments in the Filing, Certification, Settlement, Trial and Appeal of Class Actions,* SE99 A.L.I.-A.B.A. 743, 821 (2000)).

13

### C. **Typicality is Satisfied**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3).  "As a general rule, typicality looks to whether the named plaintiffs' claims are sufficiently typical of those of the class to permit the fate of the putative class's claims to remain legally intertwined with those of the lead plaintiffs." *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 416 (S.D.N.Y.), *on reconsideration in part,* 293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd,* 602 F. App'x 3 (2d Cir. 2015).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993).  "The factual background of each named plaintiff's claim need not be identical to that of all of the class members as long as 'the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (*quoting Caridad v. Metro North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (alterations in original)). "Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (*citing* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, federal practice & procedure § 1764 (1986)).

Plaintiff is typical of the class in that TSI breached a standard, template-based month-to-month gym membership contract when it uniformly raised its monthly membership dues for existing members without obtaining Plaintiff or class members' agreement, and where both Plaintiff and the class were damaged in the same way, i.e., they were charged and had to pay more money than they

agreed to.  Specifically, Plaintiff entered into a membership agreement with TSI which is materially identical to the agreements TSI entered into with members of the class, in that they all are based on templates for month-to-month gym membership that have the same or substantially similar cancellation terms. (Holden First Dep. Tr. 220:24-222:19).  As with Plaintiff, TSI charged each member of the class a higher monthly rate than their membership agreement allowed for.  And as with Plaintiff, TSI has nothing showing that any of the class members ever agreed to the rate increases. (Holden Second Dep. Tr. 76:21-77:4).  Accordingly, the typicality requirement is met here. *See, e.g., Heartland Commc'ns, Inc.*, 161 F.R.D. at 116 (typicality satisfied where plaintiffs and proposed class members all entered into identical contracts; "the same legal theories advanced by the plaintiffs apply to the entire proposed class"; and "the type of harm suffered by the representative plaintiffs is of the same type as the harm suffered by the proposed class"); *Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 16 (W.D.N.Y. 1995) (typicality satisfied where defendant could not refute "plaintiff's showing that 'all members have the same (or co-extensive) interest in challenging Defendant's repudiation of its contractual obligation to provide lifetime health care benefits'").

### D.  <u>Adequacy of Representation is Satisfied</u>

Under Rule 23(a)(4), "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This is a two-part inquiry. "Rule 23(a)(4) requires that plaintiffs demonstrate that 'class counsel is qualified, experienced, and generally able to conduct the litigation.' Plaintiff[] also must demonstrate that there is no conflict of interest between the named plaintiff[] and other members of the plaintiff class." *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (*quoting In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  The conflict of interest inquiry "merely requires that plaintiffs not have antagonistic

interests, so only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (internal quotation marks omitted).

With respect to the first component, Plaintiff's counsel will fairly, responsibly, vigorously, and adequately represent the interests of the class members whose rights were violated by Defendant, and Plaintiff's counsel has ample experience acting as class counsel in both contested and uncontested consumer protection class actions. (Lemberg Decl. at ¶¶ 3-10; Taylor Decl. at ¶¶ 4-6). Based on counsel's experience and track record, Plaintiff's counsel is clearly adequate to represent the class.

With regard to the second component, a class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 140 (S.D.N.Y. 2015), *aff'd,* 656 F. App'x 555 (2d Cir. 2016) (internal citations and quotation marks omitted). Here, Plaintiff is a member of the classes in that he entered into the month to month membership agreement with TSI after February 7, 2014 and was charged a monthly due in excess of the amount set forth in his membership agreement. He has no interests that are antagonistic to or conflicting with persons in the putative class. Plaintiff is familiar with what the case is about, what he seeks through the class action device and also understands the duties of acting as class representative, including the responsibility to see that Plaintiff's counsel prosecute the case on behalf of the entire class, not just Plaintiff. (Kolomiichuk Tr. 14:10-19; 15:25-16:19; 96:16-19; 97:5-15; 98:4-9). Moreover, because he is situated in the same manner as the putative class members, Plaintiff has a built-in incentive to vigorously litigate the class claims which she has done and intends on continuing to do. Thus, the adequacy requirement is met.

### E.  The Proposed Class Is Identified and Ascertainable

As noted, in addition to Rule 23's explicit requirement, courts in the Second Circuit have also added an implicit ascertainability requirement to the class certification process. *See Flores*, 284 F.R.D. at 122.  "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012).  Put another way, "the ascertainability requirement means that the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.,* 282 F.R.D. at 373 (internal citations and quotation marks omitted).  The ascertainability standard is "not demanding" and is "designed only to prevent the certification of a class whose membership is truly indeterminable." *Gortat v. Capala Bros.*, 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010), *aff'd,* 568 F. App'x 78 (2d Cir. 2014).

Here, the class Plaintiff seeks to certify is defined with respect to objective criteria (in a certain state; agreeing to the TSI membership agreement after February 7, 2014; being charged more in monthly dues than the amount set forth in the agreement) and can be ascertained through an administrative feasible mechanism: a review Defendant's records which contain putative class members' names, addresses, membership type, the date the membership agreement was executed, and templates for the agreement. (Holden First Dep. Tr. 54:18-22; 224:21-225:5; 226:17-227:2). Indeed, TSI's 30(b)(6) witness testified that the class is ascertainable, testifying that TSI can provide lists and spreadsheets of names and addresses of members whose rates had been increased after they had executed a month-to-month membership agreement within the last seven years, i.e., all class members. (Holden First Dep. Tr. 231:9-21 ("Q. So if I was to ask TSI to provide a list of names and addresses of members whose rates had been increased after they had executed month-to-month Membership Agreements within the last seven years, would TSI be able to do that?" A. Yes."); *see*

*also* Holden Second Dep. Tr. 53:16-54:2; 56:7-14).  *See, e.g., Martinez v. Ayken, Inc.*, 2016 WL 5107143, at *14 (E.D.N.Y. Feb. 29, 2016) (ascertainability satisfied where membership could be "ascertained by objective documentation, such as the defendants' payroll records and wage statements; and no subjective criteria are required to determine the class' contours"); *Bordeaux v. LTD Fin. Servs., L.P.*, 2017 WL 6619226, at *3 (D.N.J. Dec. 28, 2017) (class ascertainable because "[a]ll potential members are easily identified and can be contacted through defendants' business and mailing records").

## III.   THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

The proposed class should be certified pursuant to Rule 23(b)(3), which requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### A.   Predominance is Satisfied

"Predominance" demands that the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 624.  Moreover, "cases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action." *D'Alauro v. GC Serv. Ltd. Partnership*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996).  Here, the resolution of the common questions of fact and law set forth above under commonality can be achieved through generalized proof, and these issues are more substantial for each class member's case than the issues subject only to individualized proof.  As in *D'Alauro* this case relates to the "legality of standardized documents and practices," i.e., TSI's standard template-based gym membership contracts and TSI's uniform practice of raising monthly dues, and is suited to Rule 23(b) certification. *Id*. at 458; *In re U.S.*

18

*Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 125 (2d Cir. 2013) (common issues will predominate in adjudicating class breach of contract claims where contracts at issue were substantially similar in all material respects); *see also Mund v. EMCC, Inc.*, 259 F.R.D. 180, 186 (D. Minn. 2009) (materially identical contract language that raises common legal questions satisfies predominance).

In addition, where, as here, a plaintiff seeks to represent out-of-state nonparty class members with claims subject to different state laws, "the party seeking certification has the ultimate burden to demonstrate that any variations in relevant state laws do not predominate over the similarities." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 97 (2d Cir. 2018) (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) (holding that there was no predominance problem with a putative class action brought under the state contract law of various states); *Langan*, 897 F.3d at 93 ("as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)" and not a question of Article III standing). Plaintiff seeks relief for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) violation of state specific consumer protection acts. As set forth below, the requirements for each of these claims are materially the same in New York, Massachusetts, Pennsylvania and Washington D.C. with the exception that breach of the covenant not recognized in Pennsylvania.[10] Because they

---

[10] Note that Plaintiff has grouped the classes by state. Plaintiff does this for clarity and administrative purposes. For clarity in that we can address specific state law to particular classes. For administrative purposes so that, if the class is certified, notice and any claim process, if one is needed, can be clearly siloed by geographic area. However, the classes could be rephrased into one class and limited to the four geographic areas such as:

> All individuals who reside in New York, Massachusetts, Pennsylvania and Washington, D.C. who (1) entered into a membership agreement with TSI substantially similar to Plaintiff's, (2) on or after February 7, 2014, and (3) who

are materially the same, and because Plaintiff will rely on common template contracts and the common practices of TSI of raising the rates unilaterally, the core questions will determine whether these state laws are violated.

### 1.   Breach of Contract

In New York, the elements are "(1) the existence of a contract; (2) performance of the contract by the injured party; (3) breach by the other party; and (4) damages." *Lattanzio v. Lattanzio*, 13 Misc. 3d 1241(A), 831 N.Y.S.2d 354 (Sup. Ct. 2006), *aff'd*, 55 A.D.3d 431, 866 N.Y.S.2d 151 (2008)

To prove a breach of contract under Massachusetts law, a plaintiff must show "that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F.Supp. 306, 316 (D.Mass.1997); *accord Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 720 (1st Cir.1999).

In Pennsylvania, "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (2016).

And in the District of Columbia, the elements are "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

---

were charged by TSI a monthly due in excess of the amount set forth in their membership agreement.

This would not have any material change to what group of people and claims Plaintiff is asking the Court to certify.  The import of the foregoing is that the four class approach based on state is not a case of creating "subclasses to cure predominance issues" (*Langan*, 897 F.3d at 98) but is to cleanly present the structure of the claims.

Breach of contract for each jurisdiction are substantially the same and not in conflict with each other. *Lattanzio*, 831 N.Y.S.2d 354 ("there is no conflict between New York and Massachusetts law" on breach of contract); *E. Reg'l Med. Ctr., Inc. v. Clapper*, 2017 WL 7411021, at *3 (N.D.N.Y. Mar. 31, 2017) ("under New York and Pennsylvania law, the elements of a breach of contract claim are substantially the same"). "As courts have noted, state contract law defines breach consistently such that the question will usually be the same in all jurisdictions." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013).

Thus, the common questions for all class members predominate across all states for breach of contract.  As to all class members there was a valid contract. TSI breached its duties under the contract in at least two ways.  First, it raised rates beyond what the agreement called for; it could have cancelled the contracts outright, but it could not unilaterally change their terms. Second, TSI exceeded the scope of the billing authorization in the contracts, which provided TSI could only charge the provided credit card or an account as agreed in the member contract, by withdrawing more. All class members were damaged as a result.

### 2.  Breach of implied covenant of good faith and fair dealing

In New York, a covenant of good faith and fair dealing is implied in all contracts.  *Cross & Cross Props., Ltd. v. Everett Allied Co.,* 886 F.2d 497, 502 (2d Cir.1989). The covenant protects a party's reasonable expectations under the contract. *Dalton v. Educ. Testing Serv.,* 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979, 663 N.E.2d 289 (1995).

In Massachusetts, every contract is subject to an implied covenant of good faith and fair dealing. *UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). "A breach occurs when one party violates the reasonable expectations of the other," *Chokel v. Genzyme Corp.,* 449 Mass. 272, 276, 867 N.E.2d 325 (2007).

21

So too in the District of Columbia, every contract includes an implied covenant of good faith and fair dealing. *Allworth v. Howard Univ.,* 890 A.2d 194, 201 (D.C.2006). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *Allworth,* 890 A.2d at 201–02 (quoting *Restatement (Second) of Contracts* § 205, cmt. a (1981)).

Thus, the common questions for all class members predominate across all states for breach of the covenant.  First, the covenant and duty to perform in good faith and fairly arose by virtue of the contacts.  Second, TSI violated the reasonable expectations of class members. Class members signed up for gym memberships which provided they would continue month to month at $19.95.  The contracts provided that the gym could cancel at any time for any reason but the member would face a cancellation fee if they sought to end the arrangement.  The reasonable expectation was that the contract would continue under the rates agreed until they were cancelled.  However, after approximately two years TSI unilaterally raised the rates for its own business purposes without seeking new agreements, without consent and even sought to impose the cancellation fee if any member sought to end the arrangement entirely.  That was neither fair nor fair dealing.

### 3.  Unjust Enrichment

Under New York law the elements of unjust enrichment are "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder,* 19 N.Y.3d 511, 516, 950 N.Y.S.2d 333, 973 N.E.2d 743 (2012) (citation omitted).

22

Under Massachusetts law, the elements of an unjust enrichment claim are unjust enrichment of one party and unjust detriment to the other party. *See Depianti v. Jan-Pro Franchising Int'l, Inc.*, 39 F. Supp. 3d 112, 142 (D. Mass. 2014), *aff'd,* 873 F.3d 21 (1st Cir. 2017). Under Pennsylvania law, the elements of an unjust enrichment claim are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *In re Flabeg Solar US Corp.*, 584 B.R. 110, 113 (Bankr. W.D. Pa. 2018). Under District of Columbia law, the elements of an unjust enrichment claim are: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust. *Robert Half Int'l Inc. v. Billingham*, 317 F. Supp. 3d 379, 384 (D.D.C. 2018). New York's unjust enrichment law is substantially similar to the laws of Pennsylvania, Massachusetts and the District of Columbia. *See, e.g., Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011) ("Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state.") (collecting cases); *Bedi v. BMW of N. Am., LLC*, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) (same).

Thus, the common questions for all class members predominate across all states for unjust enrichment. TSI was enriched when it unilaterally raised rates outside the terms of the contract. That enrichment was at the expense of class members. It is against equity and good conscience to permit TSI to retain these amounts which were not agreed to and which were taken in violation of the membership agreement terms.

### 4. <u>State Consumer Protection</u>

New York law, N.Y. Gen. Bus. Law § 349, prohibits any "[d]eceptive acts or practices in

the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." G.B.L. § 349(a).   To constitute a misleading or deceptive act under the statute, the defendant's act must be likely to mislead a reasonable consumer acting reasonably under the circumstances. *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 561 (S.D.N.Y. 2016).

Pennsylvania law, the Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S. § 201-3, prohibits any unfair method of competition or an unfair or deceptive act or practice in the conduct of any trade or commerce.   Unfair methods of competition and unfair or deceptive acts or practices include the use of "deceptive representations," 73 Pa. C.S. § 201-2(4)(iv), and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. C.S. § 201-2(4)(xxi).

Massachusetts law, the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce. *See Miller v. Hyundai Motor Am.*, 2016 WL 5476000, at *5 (S.D.N.Y. Sept. 28, 2016) (quoting Mass. Gen. Laws ch. 93A, § 2(a)).

District of Columbia law, the Consumer Protection Procedures Act ("CPPA"), makes it unlawful to "engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to: . . . (e) misrepresent as to a material fact which has a tendency to mislead." D.C. Code § 28-3904(e).

These laws prohibit deceptive acts which harm consumers and are substantial similar. *Hanreck v. Winnebago Indus., Inc.*, 2019 WL 1383509, at *8 (M.D. Pa. Mar. 27, 2019) ("there is no actual conflict between the UTPCPL and [New York Gen. Bus. Law § 349]"); *Saavedra v. Eli Lilly & Co.*, 2015 WL 9916598, at *3 (C.D. Cal. July 21, 2015); *Friend v. FGF Brands (USA)*

*Inc.*, 2019 WL 2482728, at *1 n.2 (N.D. Ill. June 12, 2019) (parties agreed "that the standards for pleading consumer fraud are substantially identical" for all relevant states, including Massachusetts and New York); *Alce v. Wise Foods, Inc.*, 2018 WL 1737750, at *9 (S.D.N.Y. Mar. 27, 2018) (noting that under New York law to be misleading under G.B.L. § 349 an act or omission must be likely to mislead a reasonable consumer acting reasonably under the circumstances and that "[s]imilarly" under District of Columbia law an unfair trade practice is assessed as to how the practice would be viewed and understood by a reasonable consumer).

Thus, the common questions for all class members predominate across all states for violation of the consumer protection laws.  Class member contracts said they would continue month to month until cancelled.  TSI could cancel at any time or the customers could cancel and pay a fee.  TSI engaged in a deceptive act by promising under these contracts that they would continue month to month until cancelled and then, years later, unilaterally altering the contracts to raise monthly dues.

**B.  Superiority is Satisfied**

The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 309 (3d Cir. 2005).  Adjudicating the putative class member's claims on a class-wide basis is superior to other available methods for the fair and efficient adjudication of this controversy because it is neither economically feasible, nor judicially efficient, for the tens of thousands of putative class members to pursue their claims against TSI on an individual basis. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).  By utilizing the class action vehicle, relief may be provided to class members without the need for numerous separate trials on the same facts.  Hence, a class action will achieve economies of time, effort and

expense, as well as promote uniformity of decision as to persons similarly situated.   Class certification is therefore appropriate.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully request that the Court:

     1. Certify the class;

     2. Appoint Plaintiff as Class Representative; and

     3. Appoint Lemberg Law, LLC as Class Counsel.

Dated: September 6, 2019

                      Respectfully submitted,

                            By:   /s/ Sergei Lemberg
                            Sergei Lemberg
                            Stephen Taylor
                            Joshua Markovits
                            Lemberg Law, LLC
                            43 Danbury Road
                            Wilton, CT 06897
                            Telephone: (203) 653-2250
                            Facsimile:  (203) 653-3424
                            *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on September 6, 2019, I caused the foregoing to be filed and served on all counsel of record via the Court's CM/ECF system, which sent the notice of such filing to all counsel of record.

                          */s/ Sergei Lemberg*
                          Sergei Lemberg, Esq.